[Crim. No. 181.   Third Appellate District.—July 1, 1912.]

## THE PEOPLE, Respondent, v. FRANK BALLO, Appellant.

CRIMINAL LAW—GRAND LARCENY—OBTAINING MONEY BY FALSE PRETENSES—PROPER INSTRUCTION.—Where the defendant was charged with the crime of grand larceny and claimed that the crime committed was that of obtaining money by false pretenses, the court properly instructed the jury as to the distinction between the two crimes, and that if the evidence was of such a character as to convince them that the defendant had committed some other offense than that charged in the information, it would be their duty to acquit.

ID.—EVIDENCE SUFFICIENT TO SHOW GRAND LARCENY.—It is held that the jury were justified in concluding from the evidence that the prosecuting witness did not intend, when parting with his money under the circumstances shown, to vest in the defendant the title to the money, and that "it was the defendant's purpose at all times to obtain possession of the money by trick and device, and afterward appropriate it to his own use."

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order denying a new trial.   C. W. Norton, Judge.

The facts are stated in the opinion of the court.

Webster & Webster, and S. N. Blewett, for Appellant.

U. S. Webb, Attorney General, and J. Charles Jones, Deputy Attorney General, for Respondent.

HART, J.—The defendant was convicted of the crime of grand larceny, and from the judgment of conviction and the order denying him a new trial he prosecutes this appeal.

The assault upon the judgment and order is founded principally upon alleged errors of the trial court in the statement of the law to the jury.

The facts are briefly these: The complaining witness, one G. Saloni, an Italian laborer, went to the city of Stockton with an acquaintance of his in the month of December, 1911.  They registered at the Roma Hotel, which was conducted by one of their countrymen.  Saloni had for some time prior to his arrival at Stockton worked as a laborer for the Feather River Lumber Company, near Portola, in Plumas county, and when he reached Stockton had approximately $200, a portion of which he carried in two checks—one for $57 and another for $54.80.  These checks he deposited, for safekeeping, with the proprietor of the Roma Hotel.  It appears that, shortly after his arrival at Stockton, he began drinking rather heavily, and remained more or less in a state of intoxication for several days.  While thus conducting himself, he made the acquaintance of the defendant, with whom thereafter he had conversations and drank several times.  On the morning of the Thursday following the date of his arrival at Stockton, upon going out on the sidewalk in front of the Roma Hotel, he again met the defendant.  Ballo invited Saloni to join him in a drink, and the two, with a third party, went to the Gem saloon for that purpose.  After securing a drink, the defendant and Saloni returned to the sidewalk, when the former declared that he expected some mail and that he thought he had better go to the postoffice and ascertain whether any was awaiting him.  Accordingly, accompanied by Saloni, he left the place at which they were standing for the ostensible purpose of going to the postoffice.  He took Saloni through various streets and over a devious route until they reached the corner of two streets at which was located a feed stable. There they met one Manuel Schenone.  It appears that, as the defendant and Saloni were in the act of passing Schenone, the latter accosted them by the inquiry, "You are Italian boys, too, aren't you?"  The defendant and Saloni, in reply, said that they were, whereupon Schenone exhibited to them what purported to be a bill of the denomination of $100 and

began crying—evidently simulated, judging from subsequent events—and proceeded to explain that he had given a bill of like denomination to a friend, with a request that he take it to the Imperial Hotel, pay his (Schenone's) board bill and return to him with the change. Schenone said that his alleged friend had been gone a long time and that he was satisfied he would never again see him or his money. Schenone then proceeded to unfold to the defendant and Saloni a tale of how, through his father, he had acquired a small fortune, amounting to $30,000. He declared that, being without education and business judgment, he was ignorant of how he should handle his wealth. He then suggested that he would like to have the benefit of the business companionship of some of his countrymen who were honest and could be trusted to treat him squarely, and further suggested that the defendant and Saloni join him, and that the three in the future remain together and act and be as brothers to each other. Saloni assured Schenone that he and Ballo were in sympathy with his suggestion and that he and Ballo would deal squarely with him, and thereupon an association between the three for the purposes of business and mutual protection was established. Schenone inquired whether Ballo and Saloni had any money, and was informed that they had, Ballo claiming to have $300 and Saloni saying that he also had some money. Schenone then suggested that the three pool their money in one common fund, from which each could draw such sums from time to time as his necessities required. Saloni and the defendant readily acceded to this proposition, and Saloni, to carry out his part of the agreement, secured his checks, cashed them and delivered the money, with some other cash, amounting in all to the sum of $137, to Schenone. Ballo pretended to deliver to Schenone his share of the pool. Schenone, upon receiving the money of the complaining witness, gave him a handkerchief, saying that it contained some paper money which Saloni could use for present purposes or convenience. Immediately after this transaction, Schenone complained that he had suddenly been attacked by gripings in the stomach and pretended to be suffering intense pain. Several remedies were suggested, when it was finally agreed that perhaps peppermint candy might have the effect of allaying the pain. Saloni was dispatched

for the candy, Schenone and Ballo remaining together to "await his return." But, upon returning to the place where he had left his "associates," the latter were not to be found, and were not again seen by Saloni until he saw them at the police station, they having been arrested on his complaint.

Schenone, having been separately tried on an information charging him with grand larceny, said charge growing out of the same transaction as that of which the charge against the appellant here is the outgrowth, was convicted of said crime, and thereupon appealed to this court from the judgment and the order denying him a new trial, and said judgment and order were affirmed, the opinion in said cause having been filed on the seventeenth day of June, 1912 (*People* v. *Schenone, ante,* p. 280, [125 Pac. 758]).

The instructions given in the case at bar were substantially the same as those given in the Schenone case, and the objections registered against the court's charge in the present case are precisely the same as those urged against the charge given at the trial of the former case.

Counsel for the appellant claim, as they did in the Schenone appeal, that, if the defendant here was, under the evidence, guilty of any crime at all, it was of that of obtaining money by false and fraudulent pretenses and not of that of grand larceny, and they, therefore, particularly complain of the refusal of the court to take that view of the evidence.

But the circumstances (some of which are embodied in the statement above given) as disclosed by the evidence were sufficient to convince any fair-minded body of men that the defendants were acquaintances prior to the time at which Ballo first met Saloni, that the meeting of Schenone by Ballo and Saloni was no adventitious circumstance, so far as Ballo was concerned, and that the taking of Saloni's money was only the consummation of a preconceived and premeditated scheme or trick hatched by the defendants to effect a criminal design of which they hoped to make someone a victim, and which they finally worked out on Saloni.

The court, in its charge to the jury, pointed out with clearness and accuracy the distinction between the crime of larceny and that of obtaining property by false pretenses, and, moreover, instructed the jury that, if the evidence was of a character to convince them that the defendant had committed

some offense other than that charged in the information, it would be their duty to acquit.

But in the Schenone case Justice Burnett treats this contention fully and satisfactorily, and there is, therefore, no necessity for further consideration of it here. But it may here not inappropriately be repeated, as it was declared in that case, that it is very clear that the jury were justified in the case at bar in concluding from the evidence that the prosecuting witness did not intend, when parting with his money under the circumstances shown, to vest in the defendant the title to said money, and that "it was the defendant's purpose at all times to obtain possession of the money by trick and device and afterward appropriate it to his own use." All the circumstances go to show that neither Ballo nor Schenone put any money in the common pool and had no intention of doing so, and, as said in the Schenone case, "until they did so the title to the money remained in the prosecuting witness and was the subject of larceny."

The general charge of the court was full and fair, and correctly stated the law pertinent to the evidence, and the evidence amply justifies the verdict.

No other objections to the record are particularly pointed out or urged.

The judgment and order are affirmed.

Chipman, P. J., and Burnett, J., concurred.